Approved: _____
SAMUEL L. RAYMOND
Assistant United States Attorney

Before: THE HONORABLE
United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- v. -

LAWRENCE ELTING,

             Defendant.

- - - - - - - - - - - - - - - - - X

**22 MAG 6447**

SEALED COMPLAINT

Violation of 18 U.S.C.
§§ 1343, 1957, & 2

COUNTIES OF OFFENSE:
New York, Dutchess

SOUTHERN DISTRICT OF NEW YORK, ss.:

KEITH McLAUGHLIN, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

### COUNT ONE

### (Wire Fraud)

1. From at least in or about 2017 through at least in or about 2018, in the Southern District of New York and elsewhere, LAWRENCE ELTING, the defendant, willfully and knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire and radio communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, ELTING provided false information to deceive an investor into investing millions of dollars in a putative financial transaction, which funds ELTING did not in fact invest.

(Title 18, United States Code, Sections 1343 and 2.)

**COUNT TWO**
**(Engaging in Monetary Transactions In Property Derived From Wire Fraud)**

2.  From in or about September 2017 up to and including at least in or about November 2017, LAWRENCE ELTING, the defendant, in the United States and in the special maritime and territorial jurisdiction of the United States, knowingly engaged and attempted to engage in a monetary transaction in criminally derived property of a value greater than $10,000 which in fact involved proceeds of specified unlawful activity, to wit, the wire fraud charged in Count One of this Complaint, to wit, ELTING transferred hundreds of thousands of dollars which he had obtained from the victim referred to in Count One to others, including writing a cashier's check in excess of $10,000 to a credit union to pay off an outstanding loan.

(Title 18, United States Code, Section 1957(a) and 2.)

3.  I am a Special Agent with the FBI.  I am familiar with the facts and circumstances set forth below from my participation in the investigation of this case, including my participation in interviews and my review of documents and records; and from my conversations with other law enforcement officers.  Because this Complaint is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation.  Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

4.  During this investigation, I have interviewed an individual who lives in Texas ("Investor-1"), who told me the following, in substance and in part:

   a.  From in or about 2017 through at least in or about 2018, Investor-1 received investment and legal advice from a relative of Investor-1 ("Advisor-1").

   b.  In or about 2017, Investor-1 and Advisor-1 were introduced to LAWRENCE ELTING, the defendant.  ELTING held himself out as a financier associated with a hedge fund.  ELTING told Investor-1 that ELTING had the ability to execute a "private placement trade," and guaranteed that Investor-1 would receive profits from this investment.  ELTING told Investor-1 that his company was called "Trombetta Group."

c. ELTING told Investor-1 that Investor-1 would receive a guaranteed 200% return on Investor-1's investment, and suggested Investor-1 would triple Investor-1's investment.

d. After some negotiation, in or about September 2017, ELTING emailed a final investment contract (the "Contract") to Investor-1. On or about September 26, 2017, Investor-1 signed the contract and, in accordance with the terms of the Contract, sent $2 million to an account in the name of Trombetta Group at JP Morgan Chase in New York City. Under the terms of the Contract, Investor-1 was entitled to receive regular prearranged payments on Investor-1's investment from Trombetta Group.

e. In late 2017, ELTING asked Investor-1 whether, rather than continue to provide Investor-1 with regular payments from Trombetta Group, Investor-1 would instead allow ELTING to reinvest the payments for a compounded return. Investor-1 agreed.

f. For a period of time in 2017, ELTING made some payments to Investor-1, totaling approximately $500,000. ELTING described these as alleged profits from the investment, rather than Investor-1's underlying principal. After these payments, however, ELTING made no further payments to Investor-1. Instead, ELTING provided Investor-1 with various explanations and excuses justifying the failure to return Investor-1's investment.

g. On numerous occasions since late 2017, including in or about late November 2018, Investor-1 communicated with ELTING via phone; Investor-1 requested that ELTING pay back some of the money owed pursuant to the Contract. Since that date, ELTING has not repaid any of the funds.

5. During the course of the investigation, I also spoke with Advisor-1, who corroborated the above, in sum and substance and in part.[1] From my interview of Advisor-1, I also understand that Adviser-1 asked LAWRENCE ELTING, the defendant, ELTING's investment strategy. According to Adviser-1, ELTING responded that the investments would be traded into a medium-term note, which would then be resold to a pension fund. Adviser-1 further described that ELTING told Adviser-1 that ELTING only made safe transactions, and that Investor-1's

---

[1] Advisor-1 passed away in October 2020.

3

investment would be safe because there was a buyer for the note before the money was even entered into the trade.

6. Advisor-1 informed me that Advisor-1 used certain email addresses (the "Advisor-1 Email Addresses") to communicate with LAWRENCE ELTING, the defendant. I have reviewed the contents of the Advisor-1 Email Addresses obtained pursuant to a search warrant. Through my review, I identified an email address which I believe to belong to ELTING (the "Elting Email Address").[2] As part of the investigation, I have reviewed the contents of the Elting Email Address obtained pursuant to a search warrant. The Elting Email Address contains numerous messages corroborating that ELTING sent the Contract to Advisor-1 and Investor-1 in September 2017.

7. Based on my review of the Contract, which I obtained from Investor-1 and also through my review of the Elting Email Address, I have learned that the Contract includes the following terms, among others:

    a. The contracting parties were Investor-1 and ELTING.

    b. ELTING had "certain key relationship and valuable contact [sic]", which allowed him to "make available to [Investor-1] various private placement programs opportunities."

    c. ELTING agreed to "guarantee the yield profit" of Investor-1's investment as "200% of Yield Value to be paid over fifteen weeks (15) on a bi weekly tranche payment schedule. First payment to [Investor-1] due on October 16th 2017 equals to $267,000.00 per tranche."

    d. ELTING agreed that "Upon request by" Investor-1, he would "provide the requesting party with full and complete information," "as to any transaction covered by this agreement."

---

[2] I believe the Elting Email Address belongs to ELTING because, among other things: (1) the Elting Email Address contains ELTING's full name; (2) the contents of the Advisor-1 Email Addresses contain messages from Advisor-1 addressed to the Elting Email Address and calling the recipient "Lawrence"; and (3) in or about August and September 2017, ELTING identified his email address as the Elting Email Address when he applied for a loan from the "Credit Union," as defined below in paragraph 9(e).

8.  I have reviewed wire transfer records showing that on or about September 27, 2017, Investor-1 wired $2 million to an account in the name of Trombetta Group at a bank in New York City (the "Trombetta Account-1").

9.  I have reviewed bank records from the Trombetta Account-1. Those records show the following, in part:

a. The signatory for the Trombetta Account-1 is listed as LAWRENCE ELTING, the defendant.

b. As of September 1, 2017, the Trombetta Account-1 had a negative balance. On or about September 15, 2017, $200 was deposited into the account.

c. On or about September 27, 2017, the Trombetta Account-1 received a $2 million incoming wire from Investor-1.

d. On or about September 29, 2017, there was an outgoing $190,000 wire to a foreign bank. On the same day, there was an outgoing $27,000 wire to an entity that appears to be a consulting business.

e. On or about October 4, 2017, the Trombetta Account-1 cut a cashier's check in the name of a credit union based in Dutchess County (the "Credit Union") in the amount of $10,111.

f. On or about October 16, 2017, the Trombetta Account-1 records show that cashier checks of $155,000 and $55,000 were written from the Trombetta Account-1 to two individuals ("Person-1" and "Person-2"), respectively.

g. Beginning on November 10, 2017, the Trombetta Account-1 made multiple smaller payments to various retailers for what appear to be personal items, totaling at least $26,000.

h. In October and November 2017, there was a total of over $1.8 million in outgoing wire transfers, payments, checks, debit or cash withdrawals from the Trombetta Account-1.

i. As of November 27, 2018, Trombetta Account-1 had a balance of $134,392.86. That day, a cashier's check for that amount was drawn from that account (the "Trombetta Account-1 Check"), and the Trombetta Account-1 was closed.

10. I have reviewed bank records for Person-1, which show that Person-1 was in her 70s at the time she received the $155,000 check. The bank records after the transfer show no indications that the money was invested in any financial instruments.

11. In or about August 2022, an FBI agent interviewed Person-1. I have spoken to this agent, who informed me that Person-1 stated, in sum and substance and in part, that Person-1 does not have a financial background.

12. I have reviewed records from public databases, including through credit bureaus, for Person-2, which show that Person-2 was in her 70s at the time she received the $55,000 check.

13. In or about August 2022, I interviewed Person-2, as well as Person-2's son. In sum and substance and in part, Person-2 stated that Person-2 does not have a financial background, and that Person-2 does not know LAWRENCE ELTING, the defendant. Person-2's son told me that he had previously arranged for both Person-1 and Person-2 to invest money with ELTING, and that Person-2's son understood the money ELTING sent to Person-1 and Person-2 in October 2017 was in repayment for those prior investments.

14. Based on the facts above I believe that LAWRENCE ELTING, the defendant, defrauded Investor-1 by warranting that he would "guarantee" "profit(s)" and set a specific payment schedule. Once Investor-1 sent the money, ELTING diverted the proceeds to various other purposes and neither invested the money Investor-1 sent nor paid back the funds as promised.

15. Further, I have reviewed records from the Credit Union which show that in or about August 2017, LAWRENCE ELTING, the defendant, applied for a $15,000 loan from the Credit Union, and that the loan was approved. I thus believe that ELTING used the proceeds of the wire fraud to at least partially repay the Credit Union's loan with the cashier's check described in paragraph 9(e) above.

16. On or about November 28, 2018, LAWRENCE ELTING, the defendant, opened a bank account at a different bank, also in the name of Trombetta (the "Trombetta Account-2"). Based on my review of bank records, I know that on or about November 30, 2018, ELTING deposited the Trombetta Account-1 Check into the

Trombetta Account-2. Over the next few months, tens of thousands of dollars were withdrawn from the Trombetta Account-2.

WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of LAWRENCE ELTING, the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

S/ by the Court with permission
KEITH McLAUGHLIN
Special Agent
Federal Bureau of Investigation

Sworn to before me this
8th day of August, 2022

THE HONORABLE ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

7